DREW, J.
|2After a bench trial for the crime of possession of Schedule II CDS[1] with intent to distribute, contrary to La. R.S. 40:967(A)(1), defendant, Santanna Davidson, was found guilty of the responsive charge of possession of cocaine, contrary to La. R.S. 40:967(C)(2). Adjudicated as a fourth felony offender, he was sentenced to 40 years at hard labor. Additionally, he was fined $10,000, or in default, one year in jail. He appeals. We affirm the conviction, amend the sentence, and, as amended, affirm.
*293 TESTIMONY
On August 23, 2007, Sergeant Jeff Peters, Agent Chad Denham, and Agent Shawn Parker of the Shreveport Police Department responded to complaints that drugs were being used and dealt out of a Shreveport house. They arrested five people.
Sgt. Peters testified that:
• he saw a person standing outside the home turn, run inside, and slam the door;
• a neighbor told him no one lived in the home;
• he saw no working electricity in the house;
• he saw a bag on the floor containing many small plastic bags of crack cocaine;
• when he came into the living room all of the occupants were sitting on a couch;
• there was no running water;
• electricity was being “bootlegged from next door”;
• no one admitted living in the home, nor owning the drugs;
|s* he did not list the location of any of the drugs; and
• no physical evidence specifically linked the defendant to the drugs, yet all of the occupants had access to the drugs.
In connection with the testimony of Sgt. Peters, a crime lab report[2] was admitted over the objection of defense counsel, on the ground that he had not been notified of the report. The report listed the substance tested as cocaine weighing 20.4 grams.
Agent Denham testified next and gave a substantially similar account of the events, stating that there was a bag of crack cocaine lying on the kitchen floor, and that other bags of crack were strewn throughout the house, including the kitchen and hallway. He agreed that no one claimed ownership of the drugs.
Agent Parker gave similar testimony to the other officers. He stated that:
• all five subjects were sitting on a couch in the dark, near a green bag of crack cocaine;
• the room where the couch and bag were found was a 12-foot by 12-foot room, and that most of the men were sitting on a couch that blocked the front door;
• one occupant who may or may not have been the defendant was sitting on a chair;
• the bag was possibly eight to ten inches from the couch;
• the bag was packaged so as to indicate that the contents were for sale;
• he had raided many crack houses and the house in this case was similar to the others; and
14* he did not know that Agent Denham did not reference the bag found by the couch.
The defense then moved for a judgment of acquittal grounded upon the insufficiency of the evidence. The court denied the motion.
Demetrius Loston testified that:
• he was renting the house from “Ms. Pat,” who lived across the street;
• he did not pay an electric bill, but the rent was supposed to include electricity;
*294 • he had gone down the street to take care of some business and had just come back when the agents pulled up to the house;
• he ran through the house but could not exit via the jammed back door;
• someone then threw the breaker to turn off the electricity, at which point he hid all the drugs in the pantry;
• he pled guilty, exonerating the others, because all of the drugs were his;
• the police shut off the electricity and took the drugs out of the pantry;
• the officers lied about drugs being all over the house;
• one of the occupants, Robert Russell, called Davidson to pick him up;
• Davidson had been there about ten minutes when the police arrived;
• Davidson was sitting on the couch; and
• he did not know whether or not Davidson, his relative, is a drug dealer.
The defendant, Santanna Davidson, testified that:
• he admitted having three prior convictions for possession with intent to distribute (two for marijuana; one for cocaine), but insisted he was no longer dealing drugs;
• he went over to the house only to pick up Robert Russell, who was not ready to go because he was playing a video game;
• he sat on the couch while waiting for Russell to finish;
| when the police knocked, the others blocked the door with a couch;
• he never left the front room, and did not know that drugs were present; and
• no cocaine was discovered near him.
Agent Parker was recalled and testified that the drugs were found on the floor of the house, not in a pantry. Sgt. Peters was also recalled and testified that no drugs were found in a pantry. He stated that he assumed the electricity was bootlegged as there was an orange power cord running from a neighboring house through a window, and he was not sure what was plugged into it. Agent Denham was then recalled and gave similar testimony. He stated that the drugs were found on the floor of the house, packaged for individual sale.
The defense again moved for judgment of acquittal claiming the State did not have sufficient evidence to convict the defendant. The judge denied the motion. After closing arguments were made, the court stated it had charged itself with instructions concerning the witnesses’ testimony, and also with all the responsive verdicts. Thereafter, the court rendered a responsive verdict of guilty of possession of a Schedule II CDS. In due course, the court found the defendant to be a fourth felony offender.
DISCUSSION

Sufficiency

The defense claims that there was not sufficient evidence to convict the defendant of possession of a Schedule II CDS. The defense urges that the State failed to show essential elements of the crime, namely, that Davidson had knowledge of the crack cocaine, and that the drugs were 16within his dominion and control. Davidson argues that the only connection made between himself and the drugs was Agent Parker’s unreliable and uncorroborated testimony that he saw a package of drugs by the couch where the occupants were seated. The defense then claims that even if the drugs were in the room, the agent was not sure if Davidson was seated on the couch; therefore, suffi *295 cient evidence did not exist to convict Davidson.
The State agrees that no drugs were found on Davidson, but drugs were found near him. Further, the State argues that the fact that drugs were found throughout the house, and the defendant moved a couch to block the doorway, proves he exercised dominion and control over the contraband in the room. The prosecution argues that the officer was a more credible witness than was the defendant.
_ Our law on review for sufficiency the evidence is well settled.[3]
|7The defense relies on State v. Young, 618 So.2d 1149 (La.App. 2d Cir.1993), and State v. Lias, 28,091 (La.App. 2d Cir.5/8/96), 674 So.2d 1044, to argue that the defendant’s mere presence where drugs were found is not sufficient to sup *296 port constructive possession. The prosecution argues that State v. Toups, 2001-1875 (La.10/15/02), 833 So.2d 910, controls this proceeding.
In State v. Young, supra, the defendant was arrested after being found asleep in a room inside a house which contained drugs. Drugs and drug paraphernalia were found throughout the house; however, no drugs were found on the defendant or in the room where he was sleeping. The Young court found that the State failed to prove the essential elements of the crime, including that the defendant had knowledge that drugs were present, and therefore reversed his conviction.
In State v. Lias, supra, officers observed a hotel room which, reportedly, contained people engaging in drug activity. The officers | ^confronted a woman walking out of the hotel. As she saw the officers, she threw bags containing crack cocaine on the ground. The officers arrested the woman and had her go to the room and knock on the door. The defendant answered the door, and when he saw the officers, he attempted to slam the door shut and began digging in his pocket. The officers entered, retrieved a knife from his pocket, and arrested the defendant. Another woman in the room attempted to flee and threw crack cocaine as she ran. The defendant was convicted by a jury for possession of a CDS. However, on appeal this court reversed the conviction finding that there was not sufficient evidence to support it. The court focused on the fact that the room was not registered in the defendant’s name, there were no drugs found on his person, the only drugs were found on the women, and no evidence suggested that the defendant had any way of knowing the women possessed drugs. The only thing the defendant did was slam the door shut on the police. This was not enough to support the conviction.
In State v. Toups, supra, officers entered a home and found the defendant seated on a couch talking to the resident. Within three feet of the defendant was crack cocaine, and a substantial amount of cocaine was found in other areas of the house. The supreme court affirmed the conviction, finding that substantially all the factors needed to establish dominion and control were met. The factors for this court to consider include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. | qSee, State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1197 (La.1992).
Applying the dominion and control factors, we agree with the trial court that the defendant constructively possessed the drugs.
According to Agent Parker’s testimony, drugs were found within one foot of the couch. While the officers did not recall who was sitting on the couch, Davidson admitted doing so; further, Loston testified that he saw Davidson sitting on the couch. While it is not clear who turned off the electricity to the house, it is not disputed that at some point while Davidson was at the house, the electricity was on. Further, according to Davidson’s own testimony, he never left the room where the couch was. Therefore, it seems improbable that he did not see the bag of cocaine. As he is an admitted former drug dealer, it is unreasonable to assume he did not know what the bag contained.
Loston claimed to be renting the home and while he was not in actual possession, he later claimed to be the owner of all the drugs. Even if Loston did in fact own the drugs, others can constructively possess the same drugs. Loston is Davidson’s *297 cousin. This familial relationship makes it more likely that Davidson knew exactly what was going on. While there was not any evidence of actual drug use, Davidson was clearly within close proximity to the drugs and had access to them.

Crime Lab Report

Davidson argues that the lab report should not have been admitted into evidence. The report contained the analysis results and weight of the |10cocaine. According to the defendant, the recent U.S. Supreme Court decision, Melendez-Diaz v. Massachusetts, — U.S.-, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), has found that admitting such reports violates the confrontation clause and the holding in Crawford v. Washington, 541 U.S. 86, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
The prosecution argues that this specific objection was not made at trial, and was therefore waived. Further, the prosecution argues that the issue is moot as one of the appellant’s witnesses admitted that the substance was cocaine, and the police also testified that the substance field tested positive as cocaine. The prosecution also argues that the report is not testimonial; therefore, it does not fall under the purview of Crawford, supra, or Melendez-Diaz, supra.
Melendez-Diaz, supra, held that states cannot avoid Crawford by designating certain documents as non-accusatory and therefore non-testimonial. In Melendez, defendant had been arrested for possession of cocaine. To establish the fact that the substance seized was cocaine, the State submitted laboratory analysis of the substance. The report confirmed that the substance was cocaine and also stated the weight of the substance seized. The supreme court found that this laboratory report violated Crawford as it was offered as prima facie evidence of the crime, with no showing that the analysts who prepared the reports were unavailable. The records did not fall into the regularly kept records exception, since these sorts of documents are prepared for use in court, not in business.
 lnHowever, violations of the confrontation clause are subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Broadway, 1996-2659 (La.10/19/99), 753 So.2d 801. The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. State v. Broadway, supra; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
The report in this case is clearly testimonial, as was the report at issue in Melendez-Diaz. Assuming, arguendo, that the report in this case violated the Sixth Amendment, it would still be subject to a harmless error analysis.
One of Davidson’s own witnesses testified under oath that the substance was cocaine. Further, the field test performed by one of the officers determined the substance to be cocaine. These facts alone would be sufficient to allow a fact finder to conclude that beyond a reasonable doubt, the substance was cocaine. The verdict in this case, unattributable to any error, will be undisturbed.

Excessiveness

The defense argues that:
• even though the sentence is within the statutory range, it is excessive;
• the maximum sentence for possession of cocaine is five years with or without hard labor and a $5,000 fine;
• in light of the relatively minor sentence for the underlying crime, 40 years is excessive as the sentence on the habitual offender proceeding; and
*298 • the trial court did not articulate a sufficient justification for such a stiff penalty.
|12The prosecution urges that the penalty is not excessive, in light of the defendant’s criminal history. Our law on review of sentences for excessiveness is well settled.[4]
Davidson was adjudicated as a fourth felony offender. According to La. R.S. 15:529.1(A)(l)(c)(i), the sentence range is not less than 20 years at hard labor, without benefit of probation or suspension of sentence, and not more than life. The trial judge stated that he considered La. C. Cr. P. art. 894.1 in sentencing.
Davidson has three prior convictions for possession of drugs with the intent to distribute. He was convicted of possession of cocaine in this case. He is a recidivist who falls squarely within the purview of the habitual |1soffender bill. This sentence is not excessive and does not shock the sense of justice.
The habitual offender statute does not provide for a fine, but does require that the hard labor sentence be served without benefit of probation or suspension of sentence. Consequently, we amend the sentence on our own motion to delete the fine and default jail time, and to require that the forty year hard labor sentence be served without benefit of probation or suspension of sentence. State v. Ealy, 44,252 (La.App. 2d Cir.5/13/09), 12 So.3d 1052.
The trial court failed to advise the defendant of his rights per La. C. Cr. P. art. 930.8. The defendant is hereby advised that no application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence *299 has become final. State v. Fuller, 42,971 (La.App. 2d Cir.2/13/08), 975 So.2d 812.
DECREE
The defendant’s conviction is affirmed.
The defendant’s sentence is amended to omit the fine and default jail time, and to require that the 40-year sentence be served without benefit of probation or suspension of sentence. As amended, the sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND, AS AMENDED, AFFIRMED.
MOORE, J., concurs in part and dissents in part with written reasons.

. Crack cocaine.

. Interestingly, the record reflects that the crime lab report was file-stamped several months before trial, on November 27, 2008, the same date that present counsel enrolled in this case.

. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2d Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529. See also, State v. Bowie, 43,374 (La.App. 2d Cir.9/24/08), 997 So.2d 36, writ denied, 2008-2639 (La.5/22/09), 9 So.3d 141.
La. R.S. 15:438 states:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App. 2d Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Parker, 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497, writ denied, 2007-2053 (La.3/7/08), 977 So.2d 896.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,-032 (La.App. 2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App. 2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).

. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir. 1/28/04), 865 So.2d 284, writs denied, 2004-0834 (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2d Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351; State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La. 1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992).