GASKINS, J.
 

 11 The defendant, Tyrone Dewayne Gip-son, appeals his convictions for possession of a Schedule II controlled dangerous substance, cocaine, over 28 grams, but less than 200 grams; possession of a Schedule I controlled dangerous substance, methy-lenedioxymethamphetamine (MDMA a/k/a Ecstasy); and possession of a Schedule II
 
 *1093
 
 controlled dangerous substance, hydroco-done. He was adjudicated a third felony offender and was ordered to serve concurrent sentences of 35 years at hard labor and a $50,000 fine for the cocaine conviction, 20 years at hard labor for the MDMA conviction, and 10 years at hard labor for the hydrocodone conviction. For the following reasons, the defendant’s convictions are affirmed. The sentence for possession of cocaine is amended and, as amended, affirmed. The remaining sentences are affirmed.
 

 FACTS
 

 On July 28, 2007, around 1:00 a.m., Corporal Daniel Sawyer, Corporal Christopher Yarborough, and Officer Jeff Hammer of the Shreveport Police Department went to the Pendleton Apartments in Shreveport to arrest a suspect on outstanding felony warrants. The apartments are very small and all face inward onto a common area. The officers did not find the suspect. While standing in the common area, they saw a man, later identified as Willie Lee, exit apartment 109 with a smile on his face and something in his hand. Once the man saw the officers, he stopped smiling and put his hand behind his back. The officers approached Mr. Lee and asked him what was in his hand. Mr. Lee had a rock of crack 12cocaine which he said he obtained in apartment 109. He was placed under arrest.
 

 While Corporal Yarborough and Officer Hammer detained Mr. Lee outside the apartment, Corporal Sawyer walked to the apartment and knocked on the door. The door was answered by Fodie Gipson, the occupant, a man approximately in his 60s. An unidentified woman, also approximately in her 60s, was sitting on the sofa. Fodie Gipson gave his consent for Corporal Sawyer to enter the apartment.
 

 According to Corporal Sawyer, as he entered the apartment, he saw another woman, Swandolawn Brewer, coming from the bedroom. When Ms. Brewer saw Corporal Sawyer, she turned and headed back to the bedroom. She did not respond when the officer asked her where she was going. Because the apartments were known for drug sales and distribution, as well as violent crimes, Corporal Sawyer was concerned for his safety. He immediately followed Ms. Brewer back to the bedroom to make sure that she was not trying to retrieve a weapon.
 

 The defendant, Mr. Gipson’s nephew, came out of the bathroom into the bedroom and looked surprised to see Corporal Sawyer. The top dresser drawer in the bedroom was open, within arm’s length of the defendant and Ms. Brewer. The defendant and Ms. Brewer looked at the drawer and then at each other. In the drawer, Corporal Sawyer observed, in plain view, a large, white rock that appeared to be cocaine. The defendant moved in front of the dresser and closed the drawer with his rear end. Corporal Sawyer physically moved the defendant aside and reopened the drawer. The | ¡¡defendant closed the drawer on the officer’s hand. Corporal Sawyer told the defendant that he was under arrest. The defendant then started fighting the officer.
 

 Corporal Sawyer radioed for Corporal Yarborough and Officer Hammer to assist him. During the altercation, Corporal Yarborough was head butted and Corporal Sawyer received blows to his head from the defendant.
 

 The defendant attempted to flee the apartment. He was stunned with a Taser gun several times before he was subdued. The defendant was originally arrested for battery of a police officer. Cocaine, weighing approximately 30 grams, was found in the dresser drawer along with MDMA pills
 
 *1094
 
 and hydroeodone tablets. The officers also recovered more than $1,500 in cash. Approximately $700 of that amount was found on the defendant. The defendant and Ms. Brewer were placed under arrest. Fodie Gipson and the unidentified woman apparently left the apartment during the altercation.
 

 On October 29, 2007, the defendant was charged by bill of information with possession of a Schedule II controlled dangerous substance, cocaine, over 28 grams, but less than 200 grams; possession of a Schedule I controlled dangerous substance, methy-lenedioxymethamphetamine (MDMA a/k/a Ecstasy); and possession of a Schedule II controlled dangerous substance, hydroco-done.
 

 The defendant filed a
 
 pro se
 
 motion to suppress the evidence against him. A hearing was held on October 22, 2008. The defendant argued the 14motion himself, against the advice of counsel. The trial court found that the search and seizure were proper and denied the motion to suppress.
 

 On October 28, 2008, the defendant was tried by a jury. He proceeded to trial against the advice of counsel who urged the defendant to accept a plea bargain by the state with an agreed sentence of 30 years at hard labor.
 
 [1]
 
 At the beginning of the trial, the defendant expressed the desire to have his uncle, Fodie Gipson, appear to testify. A subpoena was issued. After Mr. Gipson was located, defense counsel persuaded the defendant not to call him to testify because it would not be in the defendant’s best interest.
 

 At trial, Corporals Sawyer and Yarbor-ough and Officer Hammer testified, detailing the events of the defendant’s arrest. Corporal Sawyer testified regarding entering the apartment, discovering the drugs, and fighting with the defendant, as outlined above.
 

 According to Corporal Yarborough, it appeared that drug sales had been conducted from the back window of the bathroom because there was a hole in the window screen. Corporal Yarborough testified that at the Pendleton Apartments, there were frequently holes in the window screens used to sell drugs or to get drugs out of the apartment quickly.
 

 Officer Hammer corroborated the testimony of Corporals Sawyer and Yarbor-ough. He also stated that, in addition to the large rock of crack cocaine located in the drawer in plain view, they also recovered other pieces of crack cocaine along with MDMA and hydroeodone. Officer Hammer stated that $700 was found on the defendant when he was patted down |BfoIlowing his arrest.
 
 [2]
 
 Money was also found in the drawer, on the bed, and on the kitchen table.
 

 Randall Robillard, a forensic chemist with the crime lab, was accepted as an expert and testified regarding the chemical analysis of the drugs recovered in this case. He stated that Exhibit 1 was crack cocaine weighing 31.2 grams; Exhibit 2 was MDMA, also called Ecstasy; Exhibit 3 contained smaller amounts of crack cocaine; Exhibit 4 was hydroeodone with acetaminophen.
 

 In a 10-2 verdict, the jury found the defendant guilty as charged of all three offenses. On November 19, 2008, the defendant was charged as a fourth felony offender. The bill of information alleged
 
 *1095
 
 that on May 8, 1991, the defendant pled guilty to unauthorized use of a movable and was sentenced to three months in the parish jail. On August 26,1992, the defendant pled guilty to illegal possession of stolen firearms and was sentenced to 18 months at hard labor, suspended, and 18 months’ supervised probation. On March 10, 2003, the defendant pled guilty to forgery and was sentenced to three years at hard labor. The defendant was convicted of the present offenses on October 23, 2008.
 

 At the hearing on the multiple offender charge, the prosecution showed that the defendant’s fingerprints were on the bills of information for the charges of illegal possession of stolen firearms and forgery. His fingerprints were not on the bill of information for unauthorized use of a movable. Because the state could not conclusively prove that the defendant |fiwas the same person convicted on the charge of unauthorized use of a movable, the trial court found that the defendant was a third felony offender.
 

 The defendant appeared before the court for sentencing on April 6, 2009. He was sentenced as a third felony offender to serve 35 years at hard labor with a fine of $50,000 for possession of a Schedule II controlled dangerous substance, cocaine, over 28 grams, but less than 200 grams; 20 years at hard labor for possession of a Schedule I controlled dangerous substance, methylenedioxymethamphetamine (MDMA a/k/a Ecstasy); and 10 years at hard labor for possession of a Schedule II controlled dangerous substance, hydroco-done. The sentences were ordered to be served concurrently. The defendant appealed, arguing that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion to suppress the evidence in this case.
 

 SUFFICIENCY OF THE EVIDENCE
 

 The defendant argues that the jury’s verdict is based totally on circumstantial evidence regarding his knowledge of the drugs in the apartment. He claims that the apartment was his uncle’s and that he did not live there. There was nothing in the dresser drawer where the drugs were found indicating possession or ownership by the defendant. According to the defendant, it is rational to assume that he was simply in his uncle’s apartment using the bathroom and was merely trying to protect him. According to the defendant, there is no evidence to show that he owned or possessed the money or the drugs found by the police. He claims there was 17insufficient evidence to establish his guilt beyond a reasonable doubt. This argument is without merit.
 

 Legal Principles
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992).
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Rob
 
 
 *1096
 

 ertson,
 
 1996-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529;
 
 State v. Gilliam,
 
 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422;
 
 State v. Linnear,
 
 44,830 (La.App.2d Cir.12/9/09), 26 So.3d 303.
 

 Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Robbins,
 
 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630. La. R.S. 15:438 provides that the rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Nelson,
 
 44,762 (La.App.2d Cir.10/28/09), 25 So.3d 905;
 
 State v. Owens,
 
 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610,
 
 writ denied,
 
 1998-2723 (La.2/5/99), 737 So.2d 747.
 

 To support a conviction for possession of a controlled dangerous substance, the state must prove that the defendant was in possession of the | ¡¡illegal drug and that he knowingly possessed the drug. However, to be guilty of possession of a controlled dangerous substance, one need not actually possess the contraband; constructive possession is sufficient to convict. Constructive possession means having an object subject to one’s dominion and control, with knowledge of its presence, even though it is not in one’s physical possession.
 
 State v. White,
 
 37,261 (La.App.2d Cir.6/25/03), 850 So.2d 987. A person may be in constructive possession of a controlled dangerous substance even though it is not in his actual physical custody if he willingly and knowingly shares with another the right to control it. Guilty knowledge and intent may be inferred from the circumstances of the transaction.
 
 State v. Perez,
 
 569 So.2d 609 (La.App. 2d Cir.1990),
 
 writ denied,
 
 575 So.2d 365 (La.1991).
 

 Factors which may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are the defendant’s knowledge that the illegal drugs were present, evidence of recent drug use, the defendant’s proximity to the drugs, and evidence that the area is frequented by drug users. Mere presence in the area where narcotics are discovered is insufficient to support a finding of possession. However, the fact finder may draw reasonable inferences based upon the evidence presented at trial.
 
 State v. White, supra.
 

 Discussion
 

 Viewed in the light most favorable to the prosecution, the evidence is suffi-
 
 *1097
 
 eient to support the convictions of the defendant on all three counts. The law clearly bans the possession of the substances found; the issue is |10whether the evidence presented at trial shows that the defendant was in constructive possession of the prohibited substances.
 

 According to Corporal Sawyer’s testimony, the defendant looked toward the rock of cocaine as soon as he saw the officer. The defendant immediately stepped in front of the drawer and closed it. When the officer moved the defendant and opened the drawer again, the defendant slammed the drawer on the officer’s hand. The defendant began fighting Corporal Sawyer when the officer attempted to arrest him. These factors solidly establish that the defendant had a possessory interest in the drugs. While there was no evidence of recent drug use, there was ample evidence of recent drug sales. Willie Lee was arrested outside the apartment and said he bought the drugs in apartment 109. Also, the large amount of cash found in the defendant’s pocket, the hole in the bathroom window screen associated with drug sales, and the defendant’s presence in the bathroom when the officer entered the room are factors which clearly show that recent drug sales had taken place. The defendant was in close proximity to the drugs. All three officers testified that these apartments are in a high crime area known for drug sales. These factors show that the defendant was in constructive possession of the illegal narcotics. A rational jury could have found the elements of these crimes proven beyond a reasonable doubt. Therefore, there is sufficient evidence in this case upon which to base the defendant’s convictions.
 

 J^MOTION TO SUPPRESS
 

 The defendant argues that the trial court erred in denying the motion to suppress the evidence against him. The defendant urges that there was no consent to search the house and that Corporal Sawyer had no reason to go into the bedroom; therefore, the evidence seized should have been excluded. This argument is without merit.
 

 Legal Principles
 

 The right of every person to be secure in his person, house, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is
 
 per se
 
 unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement.
 
 State v. Thompson,
 
 2002-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Ledford,
 
 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168;
 
 State v. O’Neal,
 
 44,067 (La.App.2d Cir.4/8/09), 7 So.3d 182,
 
 writ denied,
 
 2009-1243 (La.2/12/10),27 So.3d 841.
 

 The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances.
 
 State v. O’Neal, supra.
 

 When the constitutionality of a warrant-less search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of | ^proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D);
 
 State v. O’Neal, supra.
 

 The plain view doctrine is an exception to the warrant requirement.
 
 State v. Young,
 
 39,546 (La.App.2d
 
 *1098
 
 Cir.3/2/05), 895 So.2d 753;
 
 State v. O’Neal, supra.
 
 The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object’s incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object.
 
 Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990);
 
 State v. O’Neal, supra.
 

 The entire record, including the testimony at trial, is reviewable for determining the correctness of a ruling on a pretrial morion to suppress.
 
 State v. Collins,
 
 44,248 (La.App.2d Cir.5/27/09), 12 So.3d 1069. This court reviews the trial court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a
 
 de novo
 
 review to findings of law.
 
 State v. Collins, supra.
 

 Discussion
 

 The evidence seized was lawfully acquired under the plain view doctrine. Corporal Sawyer asked and received permission to enter Fodie Gipson’s residence. While lawfully inside the apartment, Corporal Sawyer saw Ms. Brewer come out of the back room and, after she saw him, she retreated back to the bedroom and failed to respond when Corporal Sawyer 11sasked her where she was going. All three officers testified that the apartment complex is considered a high crime area. Out of concern for his safety, Corporal Sawyer lawfully followed Ms. Brewer into the back room.
 
 [3]
 
 While in the room, he saw the narcotics in plain view.
 

 Corporal Sawyer had the consent of the apartment’s occupant to be in the residence. Due to the exigent circumstances of officer safety, Corporal Sawyer acted properly in following Ms. Brewer into the back room. Immediately upon entering the room, Corporal Sawyer saw the rock of cocaine and recognized it as an illegal substance. At that point, exigent circumstances existed allowing the officer to lawfully seize the drugs to prevent destruction of the evidence. The warrantless search which resulted in the recovery of the cocaine and other drugs in this case was justified under the plain view exception to the warrant requirement. The trial court correctly denied the motion to suppress.
 

 ERROR PATENT
 

 In this case, we have discovered several errors patent which require correction by this court. It appears that the trial court may not have vacated the prior sentences for these offenses before imposing the present sentences under the habitual offender statute. Although no transcript appears in this record, the trial court minutes indicate that, prior to his adjudication as a habitual offender, the defendant appeared before the trial court on February 5, 2009, at which time an oral motion for new trial was denied and |,,sentences were imposed. Accordingly, we vacate any sentences imposed upon the defendant on that date for the offenses at issue here. See
 
 State v. Dickerson,
 
 584 So.2d 1140 (La.1991).
 

 When sentencing the defendant as a habitual offender, the trial court imposed a fine of $50,000 in connection with the cocaine conviction. The habitual offender statute does not provide for a fine. Conse
 
 *1099
 
 quently, we amend the sentence on our own motion to delete the fine.
 
 State v. Ealy,
 
 44,252 (La.App.2d Cir.5/13/09), 12 So.3d 1052,
 
 writ denied,
 
 2009-1393 (La.2/5/10), 27 So.3d 298;
 
 State v. Davidson,
 
 44,916 (La.App.2d Cir.2/10/10), 32 So.3d 290.
 

 The trial court also failed to advise the defendant of his rights under La.C.Cr.P. art. 930.8. The defendant is hereby advised that no application for postconviction relief shall be considered if filed more than two years after the judgments of conviction and sentences have become final.
 
 State v. Fuller,
 
 42,971 (La.App.2d Cir.2/13/08), 975 So.2d 812;
 
 State v. Davidson, supra.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the convictions of the defendant, Tyrone Dewayne Gipson, for possession of a Schedule II controlled dangerous substance, cocaine, over 28 grams, but less than 200 grams; possession of a Schedule I controlled dangerous substance, methy-lenedioxymethamphetamine (MDMA a/k/a Ecstasy); and possession | ^of a Schedule II controlled dangerous substance, hydro-codone. We amend the sentence in connection with the cocaine conviction to delete the fine of $50,000 imposed. In all other respects, the sentences are affirmed.
 

 CONVICTIONS AFFIRMED; POSSESSION OF COCAINE SENTENCE AMENDED AND, AS AMENDED, ALL SENTENCES AFFIRMED.
 

 [1]
 

 . Ms. Brewer was originally charged as a codefendant in this matter. Because she opted for a bench trial instead of a trial by jury, the cases were severed.
 

 [2]
 

 . The record is contrary to the defendant's argument in brief that only $7.00 was found on him when he was arrested.
 

 [3]
 

 . Exigent circumstances may arise from the need to prevent the offender’s escape, minimize the possibility of a violent confrontation which could cause injury to the officers and the public, and preserve evidence from destruction or concealment.
 
 State v. Brisban,
 
 2000-3437 (La.2/26/02), 809 So.2d 923.