Judgment rendered August 9, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,254-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DESMOND JOHNSON                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 380,195

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  Mary Constance Hanes

DESMOND JOHNSON                          Pro Se

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
SENAE DENEAL HALL
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and THOMPSON, JJ.

**THOMPSON, J.**

A prior altercation between two individuals lead to a deadly encounter days later when Desmond Johnson, armed with a firearm, shot and killed the unarmed victim. Johnson was apprehended after the shooting and one of the firearms recovered matched the one used to kill the victim. Johnson was convicted by a unanimous jury of second degree murder and of two counts of a felon in possession of a firearm. He now appeals the conviction for second degree murder, claiming there was insufficient evidence to show that he did not act in self-defense when he shot the unarmed victim eight times. Johnson also asserts his second degree murder conviction should more accurately have been for the lesser charge of manslaughter. Finding Johnson's arguments unpersuasive, we affirm his convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

In the early morning hours of December 15, 2020, Reginald Young ("Young") was shot and killed in the 300 block of Jordan Street in Shreveport, Louisiana. Officers responding to the shots-fired call encountered Desmond Johnson ("Johnson"), who they detained following a flight on foot from them. Later that morning, Johnson was interviewed by police. Based on his statement to police, he was arrested for the killing of Young.

On March 5, 2021, Johnson was indicted by the Caddo Parish grand jury on one count of second degree murder. On July 21, 2021, he was charged in an amended indictment with one count of second degree murder, a violation of La. R.S. 14:30.1, and two counts of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1.

On April 11, 2022, a hearing was held regarding Johnson's December 15, 2020 statement to police and whether it was freely and voluntarily given. Detective Donald Henry testified during the hearing regarding the events that led to Johnson's apprehension and interview. Det. Henry testified that Johnson was advised of his *Miranda* rights upon arrival at the police station. Specifically, Det. Henry read aloud a "rights form" that is used during homicide investigations to Johnson. Johnson and Det. Henry both signed the form. Further, Det. Henry testified that his interview with Johnson took place after he signed the rights form. Det. Henry testified that Johnson was calm and coherent during his interview, and he stated he was not under the influence of any drugs or alcohol. At the conclusion of the hearing regarding the admissibility of Johnson's videotaped statement, the trial court found, based on the totality of the evidence submitted, that Johnson's statement to police was freely and voluntarily made, and therefore admissible at trial.

On April 18, 2022, Johnson proceeded to a jury trial on all counts. The following facts were elicited through the testimony of witnesses, including police officers and forensic professionals involved in the case. On December 15, 2020, Officer Rosendo Rodriguez of the Shreveport Police Department responded to a shots-fired call at 2:30 A.M. The 911 caller who reported gunshots described seeing a black male wearing a gray hoodie and black pants, carrying a handgun. While responding to the shots-fired call, Officer Rodriguez located a male victim with a gunshot wound to the head on the side of the road at 354 Jordan Street, in front of the Volunteers of America Building. The victim was declared dead on the scene upon arrival of emergency services. The victim, later identified as Young, had sustained

2

eight gunshot wounds. Some expended .40-claiber shell casings and one live .40-caliber bullet were located next to the victim.

Corporal Andrew Presley's K-9 unit was also dispatched to the shots-fired call. Cpl. Presley was driving east on Jordan Street approaching Centenary when he saw a man running toward him from the side yard of a residence, grasping something that appeared to be a firearm in his left hand. The man was wearing short sleeves, even though the temperature that night was in the thirties. When the man noticed the patrol car, he ran through an open gate and up the driveway of 212 Jordan Street. Cpl. Presley saw the man toss the item that he was holding while he was running. The man continued running after Cpl. Presley ordered him to stop, climbed a chain-link fence, and fell onto the concrete driveway of 216 Jordan Street. Police detained the suspected gunman and identified him as Desmond Johnson. Upon his apprehension, Johnson told the officers that he swallowed drugs that were in his possession, so he was taken to LSU Ochsner Hospital to be evaluated.

Later that morning of December 15, 2020, when it was daylight, Kevin White, a resident of 216 Jordan Street, where Johnson had been apprehended earlier that morning, located a handgun in the corner of his yard at the back of the driveway. He used a stick to pick up the handgun and place it on the porch. A little later that same morning, White located another handgun in his neighbor's side front yard. White again used a stick to carry the handgun to his porch. White's neighbor contacted the police to come collect the guns.

In response to White's neighbor's call to police regarding the handguns found in the yard, Corporal David McClure responded to 216

3

Jordan Street to collect the two handguns, which were processed into evidence. The Shreveport Police Department Crime Scene Unit processed the guns and ammunition collected from the scene. One handgun was a .40-calibur Glock 22, serial number DBR424, with an extended clip. The other handgun was a .45-calibur Glock 22. Both firearms were loaded when found.

Troy Stracener with the North Louisiana Crime Lab conducted comparison testing for both guns with the bullets and bullet fragments removed from Young's body during his autopsy, as well as the the shell casings and bullet fragments found at the scene. The report generated by the lab determined that the five .40 caliber casings, a bullet jacket, and two bullets recovered from the victim were all fired from the .40 caliber Glock with the extended clip. Stracener's certified report provided: "The five fired .40 caliber cartridge cases in item 1 were determined to have been fired in the .40 caliber Glock pistol, Model 22C, serial number DBR424 US […]."

Johnson's videotaped interview from December 15, 2020, with the Shreveport Police was entered into evidence and played for the jury. After Johnson was released from LSU Ochsner Hospital, Detective Donald Henry interviewed him at the Violent Crimes Office of the Shreveport Police Department. During the interview, Johnson initially claimed he heard gunshots while he was out walking, around 12:00 or 1:00 A.M. However, when Det. Henry asked him about the two firearms that were found at 216 Jordan Street, confronted him with the facts that the shots occurred well after midnight, and stated that the victim was shot on Jordan Street, Johnson responded that when you "put it like that, you have me jammed." Johnson then admitted to having an altercation with Young a few days prior, because

4

Young had allegedly stolen items from his godmother's home. Johnson admitted to telling Young (a.k.a. "One Eye") that he would "beat the shit out of him" if he saw him again. Det. Henry testified that Johnson explained that he would appear weak in the community if he let Young get away with the theft of his godmother's things. Johnson stated that when he saw Young on the street, Young tried to speak with him. Johnson nodded "yes" when asked whether Young was trying to be friendly or resolve their dispute. Johnson stated that Young was pursuing him and grabbed him on the shoulder to turn him around. Johnson claimed that he acted due to a quick reflex and shot the gun he had at his side. Young called out to him, "Dez" and it's "not like that," but Johnson fired more rounds, shooting Young at least five times. Johnson did not know whether Young was armed, and never claimed that Young threatened him. Johnson also admitted to using the firearm with "the stick," referring to the extended magazine clip on the .40-caliber Glock.

Dr. Long Jin is a forensic pathologist at LSU Ochsner Hospital who performed the autopsy on Young. Dr. Jin testified and confirmed that Young sustained eight gunshot wounds. Dr. Jin testified that Young had two gunshot wounds to the chest. Further, Young sustained at least two gunshot wounds to his hands, with entrance wounds in the palm. Dr. Jin testified that the wounds to his hands were defensive in nature. Dr. Jin testified that there were two gunshot wounds to Young's back, one in the upper back and one in the lower back. Dr. Jin testified that a final gunshot wound was behind Young's ear, with a trajectory of back to front, behind the right ear.

At the conclusion of the four-day trial, on April 19, 2022, the 12-member jury unanimously found Johnson guilty as charged on all three

counts. On May 10, 2022, the trial court sentenced Johnson to life imprisonment without benefit of probation, parole, or suspension of sentence on count one, second degree murder. The court also sentenced him to 18 years at hard labor without benefit of probation, parole, or suspension of sentence on each of the two counts of felon in possession of a firearm. This appeal followed.

## DISCUSSION

Johnson asserts one assignment of error:

**Assignment of Error Number 1: The evidence is insufficient to support Desmond Johnson's conviction for second degree murder as the State failed to prove Johnson did not act in self-defense; Mr. Johnson's conviction should be reversed, or in the alternative, the verdict should be modified to reflect a judgment of conviction for the lesser included offense of manslaughter.**

Johnson argues that there is insufficient evidence to support his conviction for second degree murder, because the State failed to prove beyond a reasonable doubt that he did not act in self-defense. On appeal, Johnson asserts that the issue is whether he acted in self-defense when he shot and killed Young. Johnson argues that the killing of Young was justifiable because he reasonably believed he was in imminent danger of losing his life or receiving great bodily harm, and that the killing was necessary to save himself from that danger. Alternatively, Johnson argues that, at most, he should have been convicted of manslaughter, claiming that he acted in sudden passion or heat of blood. Johnson argues that he and Young had been involved in a previous altercation. He contends that this prior altercation, coupled with Young suddenly grabbing his shoulder, served as the catalyst for the shooting.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now codified in La. C. Cr. P. art. 821, does not afford appellate courts with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The *Jackson* standard is applicable to cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *Broome, supra*; *State v. Gipson*, 45,121 (La. App. 2 Cir. 4/14/10), 34 So. 3d 1090, *writ denied*, 10-1019 (La. 11/24/10), 50 So. 3d 827.

7

Appellate courts neither assess the credibility of witnesses nor reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 6/27/03), 847 So. 2d 1255.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Coffey*, 54,729 (La. App. 2 Cir. 9/21/22), 349 So. 3d 647, *writ denied*, 22-01574 (La. 12/20/22), 352 So. 3d 89; *State v. Wilson*, 50,418 (La. App. 2 Cir. 4/6/16), 189 So. 3d 513, *writ denied*, 16-0793 (La. 4/13/17), 218 So. 3d 629.

In the present case, Johnson was convicted of second degree murder in violation of La. R.S. 14:30.1, which is defined, in pertinent part, as "the killing of a human being: (1) when the offender has a specific intent to kill or inflict great bodily harm[.]" Regarding Johnson's claim that he should have been convicted of the lesser offense of manslaughter, La. R.S. 14:31(A) provides, in pertinent part:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool

reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood had actually cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

Accordingly, for murder to be reduced to manslaughter, the following must be proved: (1) the homicide was committed "in sudden passion or heat of blood"; (2) that sudden passion or heat of blood was immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection; (3) the defendant's blood did not cool between the provocation and the killing; and (4) an average person's blood would not have cooled between the provocation and the killing. *State v. McGee*, 51,977 (La. App. 2 Cir. 4/3/19), 316 So. 3d 1196; *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153.

A defendant who claims provocation as a means of reducing murder to manslaughter bears the burden of proving these elements by a preponderance of the evidence; additionally, provocation and the time for cooling are questions for the jury to determine according to the standard of the average or ordinary person. *State v. Leger*, 05-0011 (La. 7/10/06), 936 So. 2d 108, *cert. denied*, 549 U.S. 1221, 127 S. Ct. 1279, 167 L. Ed. 2d 100 (2007); *McGee*, *supra*. In this case, Johnson was unable to persuade the jury to believe his theory he had only committed manslaughter when he encountered the victim that morning.

When a defendant raises self-defense as an issue, the burden is on the State to prove beyond a reasonable doubt that the homicide was not perpetrated in self-defense. In determining whether a defendant had a reasonable belief that the killing was necessary, factors that may be

9

considered include the excitement and confusion of the situation, the possibility of using force short of killing, and the defendant's knowledge of the assailant's bad character. The question on a sufficiency of the evidence review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in the defense of others. *State v. Lensey*, 50,242 (La. App 2 Cir. 11/18/15), 182 So. 3d 1059, *writ denied*, 15-2344 (La. 3/14/16), 189 So. 3d 1066. Johnson was unable to persuade the jury to believe he acted in self-defense.

We find that there was sufficient evidence to support Johnson's conviction for second degree murder. The unanimous guilty verdict shows that the fact finder rejected the notion that Young's murder was committed in self-defense or that it was merely manslaughter. The evidence, viewed in the light most favorable to the prosecution, was sufficient for the jury to find the elements of second degree murder proved beyond a reasonable doubt. Under the same *Jackson* standard, the evidence was sufficient for the jury to find beyond a reasonable doubt that the homicide was not committed in self-defense.

Johnson, who was looking for an opportunity to confront Young, shot Young multiple times with a handgun, one equipped with an extended clip to hold additional rounds of ammunition. The record establishes that Young was not armed, and Johnson did not have any reason to believe he was armed. Johnson admitted during his statement to police that Young was simply trying to speak to him about their prior altercation. The record does not contain any evidence that Young threatened Johnson during their encounter on the street, or any time prior. Further, the record does not

10

provide any reason for Johnson to assume that Young was armed and intended him any harm. In fact, Johnson admitted to having a desire to beat Young, because he believed Young had stolen from a member of his family and allowing that to go unaccounted for jeopardized Johnson's reputation in the streets. Johnson's hostility toward Young, combined with the fact that he was armed with two loaded handguns when he encountered him on the street, is sufficient to show that he did not act in self-defense and that he did have the specific intent to kill Young. Further, Johnson did not plead self-defense, and nothing in his statement to police established that he acted in self-defense. As such, we find the State proved beyond a reasonable doubt that Johnson did not murder Young in self-defense.

Additionally, Johnson failed to prove by a preponderance of the evidence that his murder of Young was merely manslaughter. Johnson contended that days prior to their fateful encounter, Young stole from his family. Johnson failed to prove that the homicide was committed in sudden passion or heat of blood, because his alleged issue with Young arose days prior to the encounter on Jordan Street. Young's touching his shoulder during their conversation does not amount to provocation sufficient to deprive an average person of his self-control and cool reflection. Even if Johnson was angry about the alleged theft, an average person's blood would have cooled well before their encounter on the street. Accordingly, Johnson's assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, Desmond Johnson's conviction for second degree murder and sentence of life imprisonment without the possibility of probation, parole, and suspension of sentence are affirmed.

**AFFIRMED.**