Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,793-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TREVARIOUS WINSLOW                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 372,580

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

JASON W. WALTMAN
REBECCA ARMAND EDWARDS
COURTNEY RAY
Assistant District Attorneys

* * * * *

Before THOMPSON, ROBINSON, and ELLENDER, JJ.

**THOMPSON, J.**

Two people were killed, and another seriously wounded, from a brawl and gunfight between club security and a local rapper's entourage that occurred outside a lounge in Shreveport, Louisiana. The defendant, Trevarious Winslow, was a security guard that night and suffered four gunshot wounds but survived. He was later charged with two counts of second degree murder and ultimately convicted by a jury of the lesser charges of two counts of manslaughter. The trial court sentenced him to concurrent sentences of 30 years at hard labor on each charge. On appeal, and for the first time, Winslow asserts he acted in self-defense on the night of the shooting, and that as a first-time offender his sentences are constitutionally excessive under the facts and circumstances of that chaotic night. For reasons more fully detailed below, we affirm his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On June 9, 2019, two individuals suffered fatal gunshot wounds at the Royalty Cigar Bar & Hookah Lounge in Shreveport, Louisiana. On December 18, 2019, a grand jury returned a two-count indictment for second degree murder against Trevarious Winslow, who was working as a security guard at the location and who suffered four gunshot wounds. Winslow pled not guilty.

At Winslow's trial in January 2023, Shreveport Police Department officers testified and described a chaotic scene when they arrived to find the two victims, Chasmine Walters (a club security guard) and Lee'Jerryius Baines (a member of a local rapper's entourage), on the ground outside the club bleeding and unconscious. Winslow was found bleeding inside an

office in the back of the club; he had been shot four times during what can only be described as a hail of bullets in a shootout with at least 13 shots fired by at least two different weapons. Officer Francis Mogavero testified that none of the approximately 40 witnesses present at the shooting scene that night claimed to have seen anything, which, sadly, the officer described as a typical response when investigating shootings.

Detective Taywania Jackson learned during the investigation that a verbal altercation had become physical and escalated to the shooting. Det. Jackson testified that potential witnesses were not interested in providing their names or information. She interviewed two Royalty Lounge security guards and obtained surveillance video from the club. She identified the defendant, Winslow, as at least one of the shooters there that night through her investigation.

Detective Kenny Thompson testified regarding the surveillance video from the club, which showed people running toward the door of the club at the time of the altercation, presumably to see what was happening. Det. Thompson also identified Winslow in the video as a male wearing pink shorts and a white t-shirt. Winslow was shown walking inside the club and then exiting shortly before the people behind the bar dropped to the floor in response to hearing the gunshots.

Following the night of the shooting, Winslow was hospitalized for 26 days for his four gunshot wounds. After his discharge from the hospital, he was interviewed by Det. Thompson at a home in Natchitoches. During that interview Winslow told Det. Thompson that he and some friends who worked together as security for the Royalty Lounge had been at the Horseshoe's hotel pool earlier on the day of the shooting. Winslow was not

2

scheduled to work the evening of the shooting; however, he decided to volunteer to help the friends with security that night. That evening while he was working security at the club, Winslow exchanged words with a man who knocked over the rope outside the club; the man was known to Winslow as a member of a local rapper's entourage. Winslow was then hit by another man, whom he later identified as a local rapper, Kenyon Frazier a/k/a Green Eyez.[1] Winslow went inside to notify the club's manager, Brandon Davis, and when he returned outside, the shooting started. Winslow told Det. Thompson that he did not see who shot him. Interestingly, at that time Winslow denied shooting anyone, and he denied having a gun.

Photographs introduced into evidence at trial showed Winslow's pink shorts covered in blood, as well as three bullets found in the pockets of those pink shorts. Additionally, there were photographs of a blood trail and blood on other items in the office where Winslow was found injured after the shooting. Officer Amber Futch located a .40 caliber Smith & Wesson firearm, covered in blood, in the top drawer of a filing cabinet in that office. Photographs of the bloody gun were also entered into evidence.

The North Louisiana Criminalistics Laboratory ("Crime Lab") prepared a report regarding a DNA analysis performed on the blood found on the Smith and Wesson firearm found by Officer Futch. The report provided that a blood sample from Winslow matched the blood that was found on the firearm. The record also provides that the police investigation determined a fingerprint found on the .40 caliber Smith & Wesson firearm matched Winslow's left thumb.

---

[1] Frazier a/k/a Green Eyez did not testify at trial, because he could not be located.

3

A certified report prepared by the North Louisiana Crime Lab also analyzed the bloody .40 caliber Smith and Wesson firearm. The ballistics report provided that five of the 13 shots fired during the shootout came from the Smith & Wesson and concluded that the bullets that killed both the victims, Walters and Baines, were fired from the .40 caliber Smith & Wesson firearm connected to Winslow.

Brandon Davis, the Royalty Lounge manager, testified that the security guards are not allowed to have guns. Brandon insisted he did not see anyone with a weapon and did not see Winslow outside of the club during the fighting. Brandon testified he found Winslow in the office bleeding and gasping for air. Brandon's wife, Monique Davis, testified that Winslow was not on the schedule to work the evening of the shooting. She further testified that Winslow was outside, ran past her toward the fight, and then shots rang out. Monique did not see Winslow with a gun that night and could not say where the initial shots came from.

Winslow did not testify at his trial, either by his own decision or under advice of counsel. By joint stipulation, evidence regarding his injuries and medical treatment was introduced and read to the jury. As indicated above, Winslow sustained four gunshot wounds and spent 26 days in the hospital. Defense counsel argued a theory during closing arguments that Winslow was shot as he ran to help his friend in the fight and asserted that Winslow did not have a gun and did not shoot.

On January 12, 2023, the jury returned responsive verdicts finding Winslow guilty of manslaughter on each count. On March 28, 2023, the trial court denied a post-verdict judgment of acquittal asserting that the State failed to prove Winslow fired the shots that killed the victims. On March

30, 2023, the trial court sentenced Winslow to 30 years at hard labor on each count, ordered the sentences to run concurrently, and that he receive credit for time served. A motion to reconsider sentence was denied on April 24, 2023. This appeal followed.

## DISCUSSION

Winslow asserts two assignments of error.

**Assignment of Error No. 1: The State failed to prove beyond a reasonable doubt Mr. Winslow shot Ms. Walters or Mr. Baines. In the alternative, the State failed to prove beyond a reasonable doubt Ms. Walters or Mr. Baines were not shot in self-defense. Given these facts, the evidence was insufficient to prove Mr. Winslow was guilty of manslaughter beyond a reasonable doubt.**

On that fateful night, Winslow, Walters, and Baines were all shot multiple times during the shootout between club security and Green Eyez' entourage. Winslow notes that during the exchange of gunshots, he was shot four times. A gun that the State linked to Winslow through fingerprint and blood evidence was fired 5 times, which killed Walters and Baines. The gun or guns that injured Winslow was/were fired at least 8 times, based on the number of shell casings recovered at the scene. Winslow asserts that the State failed to prove beyond a reasonable doubt that Winslow fired the shots that killed Walters and Baines. Alternatively, Winslow asserts that given the murderous reputation, violent conduct, and the shots fired by Green Eyez and his entourage, that the State failed to prove beyond a reasonable doubt that Walters and Baines were not shot in self-defense.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v.*

5

*Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now codified in La. C. Cr. P. art. 821, does not afford appellate courts with a means to substitute their own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The *Jackson* standard is applicable to cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *Broome*, *supra*; *State v. Gipson*, 45,121 (La. App. 2 Cir. 4/14/10), 34 So. 3d 1090, *writ denied*, 10-1019 (La. 11/24/10), 50 So. 3d 827.

Appellate courts neither assess the credibility of witnesses nor reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to

accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2997 (La. 6/27/03), 847 So. 2d 1255.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Johnson*, 55,254 (La. App. 2 Cir. 8/9/23), 370 So. 3d 91; *State v. Coffey*, 54,729 (La. App. 2 Cir. 9/21/22), 349 So. 3d 647, *writ denied*, 22-01574 (La. 12/20/22), 352 So. 3d 89.

When a defendant raises self-defense as an issue, the burden is on the State to prove beyond a reasonable doubt that the homicide was not perpetrated in self-defense. In determining whether a defendant had a reasonable belief that the killing was necessary, factors that may be considered include the excitement and confusion of the situation, the possibility of using force short of killing, and the defendant's knowledge of the assailant's bad character. The question on a sufficiency of the evidence review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in the defense of others. *State v. Johnson*, *supra*; *State v. Lensey*, 50,242 (La. App. 2 Cir.

7

11/18/15), 182 So. 3d 1059, *writ denied*, 15-2344 (La. 3/14/16), 189 So. 3d 1066.

We note that Winslow did not claim self-defense at his trial; he repeatedly denied firing a gun during the shootout. Therefore, the State did not bear the burden of proving that the homicides were not committed in self-defense. The physical evidence, including the firearm, blood, and DNA evidence, as well as the circumstantial evidence, including the surveillance footage and testimony of witnesses and law enforcement officers, refuted Winslow's claims that he was not the shooter. With all the evidence viewed in the light most favorable to the prosecution, the State negated any reasonable probability of Winslow's misidentification as the shooter. We find that the evidence was sufficient for the jury to find beyond a reasonable doubt that Winslow was guilty of manslaughter. Accordingly, this assignment of error is without merit.

**Assignment of Error No. 2: Mr. Winslow had no prior felony convictions, had a consistent work history, was working security at the time of the shooting, was responding to a violent confrontation just outside the club, and was aware the confrontation involved Green Eyes, a rapper with a reputation for deadly violence. Moreover, one alleged victim was a member of Green Eyez' entourage, which was engaged in a violent altercation with club security. Finally, Mr. Winslow was shot, almost fatally, by a member of Green Eyez' entourage during this incident. Accordingly, the trial court erred by imposing an unconstitutionally harsh and excessive sentence, 30 years of imprisonment on each count to be served concurrently.**

Winslow argues that given the unique facts of this case and Winslow's first-felony offender status, the trial court erred by imposing an unreasonably excessive sentence. The State notes that the trial court thoroughly considered aggravating and mitigating factors under Article 894.1(B). The trial court found that Winslow knowingly created a risk of

death or great bodily harm to more than one person, the offense resulted in permanent injury to the victims or their families, he used a dangerous weapon, and the offense involved multiple victims. Winslow fired at least five rounds, killing two young people (ages 22 and 29). The trial court did acknowledge one mitigating factor in sentencing – the possibility that Winslow acted under strong provocation. As the claim of self-defense was never asserted at trial, the jury and trial court were only presented with Winslow's consistent denials of being involved in the shootings, rather than any explanation of how his being shot may have impacted him in returning fire or accidentally striking his coworker. This court cannot create a possible narrative to explain the occurrences that night – resulting in the death of two people – that the defendant, himself, never asserted or explained.

The law concerning excessive sentences is well-settled; claims are reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *Id.*

A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. O'Neal*, 55,559 (La. App. 2 Cir. 2/28/24), 381 So. 3d 273; *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1156. To constitute an excessive sentence, a reviewing court must find that the penalty is so grossly

9

disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. *State v. Griffin*, 14-1214 (La. 10/14/15), 180 So. 3d 1262; *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153, *writ denied*, 18-2052 (La. 4/15/19), 267 So. 3d 1131. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Griffin*, *supra*; *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. O'Neal, supra; State v. McKeever*, *supra*.

La. R.S. 14:31(B) provides, in pertinent part, that a person found guilty of manslaughter "[s]hall be imprisoned at hard labor for not more than forty years." The trial court here was well familiar with the facts of this case, as the judge presided over both Winslow's trial and the sentencing hearing. The record indicates that the trial court thoroughly considered the sentencing factors set forth in Article 894.1. The trial court noted one relevant mitigating factor, acknowledging that Winslow acted under strong provocation on the night of the shooting. The record contains a written statement from Winslow in the presentence investigation report; Winslow maintains that he did not fire a weapon on the evening of the incident. However, the trial court clearly contrasted that statement with the evidence in the record showing that Winslow did in fact fire a gun that evening, and that bullets from the gun he fired killed two individuals.

Appellate counsel, unenviably faced with a client who consistently denied possessing or firing a weapon on the night of the shooting, directs this court's focus on the length of Winslow's sentences to the understandable chaos which had erupted at the scene on the night of the shooting. Winslow argues on appeal there may well have been an explanation of the events that unfolded that night that would justify a jury finding he acted in self-defense. Winslow, after conclusion of the trial and imposition of sentences, is now asking this Court for consideration in reviewing those sentences by asserting he fired the weapon in self-defense after being shot and certainly never intended to shoot his coworker. The appropriate opportunity for explaining why he should not be tried, convicted, and sentenced for the two deaths for which he is responsible would have been before and during trial.

Winslow has consistently denied shooting anyone that night, from his initial interview with law enforcement through his letter to the court for consideration of sentencing after his conviction. We refuse to modify the lawful sentences on grounds that lend themselves more to a claim of factual innocence or self-defense, rather than excessiveness. As such, we find that Winslow's concurrent sentences of 30 years, well below the maximum sentence range of 40 years, are not constitutionally excessive, and the trial court did not abuse its discretion in sentencing him to midrange sentences for two manslaughters.

## CONCLUSION

For the foregoing reasons, Trevarious Winslow's convictions and sentences are affirmed.

**AFFIRMED.**

11